RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

APR 27 2015

FILED
DOCKETED _____ DATE _____ INITIAL 4-25-2015

Susan Su   #1577311
FCI  Unit F
5701 8th Street. Dublin CA 94568

U.S. Court of Appeals Building
95 Seventh St. SF. CA 94103
P.O. Box 193939. SF. CA 94119.

Re: D.C. No. CR11-0288-JST.
     Appeal Case No. 14-10499.

Dear Respectful Court;
    I'm writing to you regarding response to government's brief of my Appeal Case. I'm hereby submit to your honorable court the response to section of "Insufficient Evidence and Facts to Support all Counts" for your review.
    This attachment was also given to Defense Attorney John Jordan who said it had been included in the document to court. Due to the recent incident of faking of my original signature on a wrong agreement content. I have no faith on any party any more. Please review the truths included in this section for your honorable decisions. I really appreciate this.
                              Sincerely
                              Susan Su

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

APR 27 2015

FILED _____
DOCKETED_____  _____
                DATE      INITIAL

To:

U.S. Court of Appeals Building.
95 Seventh St. SF. CA.
P.O. Box 193939. SF. CA 94119

Re: D.C. No. CR 11-0288-JST.

Appeal Case No.: 14-10499.

Contents For Insufficient Evidence to
Convict all Accounts.

Page 1

## Insufficient Evidence and Facts to Support All Counts

Motion for judgment of acquittal is granted for the reason of insufficiency of evidence to sustain conviction. U.S. v. Clemons. W.D. PA 1987, 658 F Supp. 116, affirmed 843 F. 2d 741; U.S. v. Turner, E.D. Mich 1978. 490. F Supp. 583; U.S. v. Cohen, E.D. PA 1978, 455 F. Supp. 843, affirmed 594 F. 2d 855.

Motion of judgment acquittal should be granted if (1) evidence is insufficient to sustain conviction; or (2) if there is variance between the proof and the crime charge; or (3) there is no evidence on which reasonable mind might faintly conclude guilt beyond reasonable doubt. U.S. v. Arena, N.D. N.Y. 1996, 918 F. Supp. 561.

Motion for judgments of acquittal focusing on sufficiency of evidence should be granted where evidence, viewed in light most favorable to government, is such that reasonably minded jury might have reasonable doubt as to the existence of an essential element of crime charged. U.S. v. Bellrichard, D. Minn, 1991, 779. F. Supp. 454.

## Count 1-12: Wire Fraud

Defendant was charged with committing 12 counts of wire fraud in violation of 18 United States Code Section 1343 from September 15th, 2008 to January 7th, 2011. Specifically (page 149, line 25; page 150; line 1-13):

Count 1. September 15th, 2008;

Count 2. February 21st, 2009;

Count 3. January 10th, 2010;

Count 4. January 27th, 2010;

Count 5. July 27th, 2010;

Count 6. July 27th, 2010;

Count 7.    August 31st, 2010;

Count 8.    September 7th, 2010;

Count 9.    September 20th, 2010;

Count 10.    September 24th, 2010;

Count 11.    January 7th, 2011;

Count 12.    January 7th, 2011.

*Mail Fraud and wire fraud have a required element of harm been done which the trial failed to prove for all counts 1-14.*

In order for the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt. First, the defendant must knowingly participated in, devised of intended to devise a scheme or plan to defraud of a scheme of plan for obtaining money or property by means of false of fraudulent pretenses, representations or promises. Second, that the statements made or facts omitted as part of the scheme are material; that is that they had a natural tendency to influence or were capable of influencing a person to part with money or property. Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat. Fourth, the defendant used, or caused to be used, the wires to carry out or attempt to carry out or attempt o carryout an essential part of the scheme. And fifth, the wire communication traveled in interstate commerce, and must influenced interstate commerce. (page 1777, page 1778)

If any of these elements did not exist, or no sufficient evidence to sustain, a judgment acquittal shall enter.

### Count 1. Wire Fraud. September 15th, 2008.

Defendant was charged with committing a wire fraud on September 15th, 2008 (page 150, line2) in violation of Section 1343.

The best evidence the U.S. attorney presented was an I17 form; which was proved at trial to be received by SEVP through mail on October 15th, 2008, and which was sent to SEVP by Fedex on October 14th, 2008 by TVU's on-site inspector Mr. Cory Well (page 2999 line 1).

Furthermore, the professional expert and Director Head of Department of Homeland Security, Ms. Susanna Warner, _____, testified under oath that I17 form was filled by SEVP Case Analyst on 09/15/2008 (page 262, line 5-6) by populating the data in SEVP's data system.

The U.S. attorney has failed to prove or show any evidence of the most important element of the wire fraud, the 4th one, that the defendant on that day used the wire or caused to use the wire. The obvious fact is that she did not. Furthermore, the fifth element, the wire communication traveled in interstate commerce is missing (evidence by Agent Mackey's testimony also) since SEVP Case Analyst was taking the data from their local server on 09/15/2008.

Not to even mention the missing of the second element of "deprive any person's property". Sending I17 Petition, TVU actually make money payments to Department of Homeland Security. (page .....) But nowhere has any evidence of defraud the government any money.

The evidence of Ms. Su's involvement in the I17 form in all capacities is shown on page 271, line 18-19. On October 14th, 2008, not 09/15/2008, she signed her name declaring: "I certify that I am authorized to execute this petition. I understand that unless this institution fully complies with all terms as described on this form, approval may be withdrawn pursuant to 8. CFR 214.4." to indicate she authorized the execution of the petition.

It should be noted that there were many volunteers involved in Tri-Valley University early stage built-up, and TVU was consulting with professional school builder company for I-17 Petition. No direct evidence was presented during the trial that Dr. Su entered or prepared the I17 form on any of the dates.

The evidence presented in the trial was a hearsay statement of Agent Mackey of the interview during the January, 2011 raid. He said he heard her saying that: "I did initialize the application online" (page 588, line 15-19 and page 271-272); that we heard she created the Tri-Valley University's school ID/password on SEVP website since that ID/password only shall be processed by school owner from Ms. Susanna Warner's sworn testimony (page 248, line 15-18]. And the most favorable evidence is that Agent Mackey's hearsay statement that: "She stated that the first

submission was made through the Internet, at her residence in Pleasanton." – so the submission was not made from the commerce office, but a residential place. There is apparently no travel in between interstate commerce.

There is no real recording of Dr. Su's voice saying any of those words. The lack of presentation of the recording shall lead to the ground for a new trial. Agent Mackey's credibility lands in the province of the Jury. There is no single evidence to show Dr. Su did enter any of these data into TVU's local computer or SEVP's system – not a single one. Everyone, the prosecutor, the defense attorney, ......, made judgment based on wrong imagination for both reasons of insufficient evidence and conviction based on speculation. The Judgment acquittal shall by granted for this Count.

Furthermore, no evidence was presented on the intent and Dr. Su having participated knowingly in any fraud. The prosecution went in great length/effort to find anything not true in TVU's I17 forms by checking item-by-item.

Defendant further moves the court for the dismissal of this count of wire fraud in the indictment for the following reasons: The Supreme Court has ruled on the statute of limitation of mail fraud and wire fraud cannot use for government license and certification related prosecution. The SEVP expert, DHS Director Head Ms. Susanna Warner, clearly gave the definition of the entire I 17 petition is "SEVP School Certification Process." (page 247, line 24-25) and SEVP is a program that falls under the Department of Homeland Security, and it certifies schools that want to bring foreign students to study in US (page 241, line 5-8).

The government license and certification has no money value, and there is no fraud by defendant for any money – the main element to constitute the offense.

### Count 2. Wire Fraud. Feb 21st, 2009

Count 2 of Wire Fraud Government alleged is an email Dr. Su sent to Bhargav on February 21st, 2009 after TVU received SEVP approval for admitting international students. (page 1824, line 1-10; page 614, line 1-24, page 615, line 1-2)

"Hi, This is Dr. Susan Su from Tri-Valley University. I'm trying to reach Rao Bhargav. I hope one of these email addresses will reach you. I met you before at Heguan University. I know that you have been working actively as the student recruiter recruiting students from India. The reason I am in contact is that Tri-Valley University has recently received full SEVIS approval for issue I-20 to international students. We are currently looking for students at India and other countries. Would you please give me a call (925) 209-9538 to talk about details, and also if you have a friend who works as a recruiter, please also pass his/her contact to me. If you have Abhilash and Samuel Steven's contact information, please also pass to me. Best Regards, Susan Su."

During the trial, the U.S. attorney continued to present two checks from Tri-Valley University paid to the ABS member Samuel Steven, signed by Dr. Su.

However, the government failed to show or prove any evidence of Dr. Su deprive ABS's any money – (rather the other way around that Dr. Su paid to ABS) which is the second required element to constitute the wire fraud offense. No single evidence showed that Dr. Susan Su defraud ABS member any money. There is not even any evidence of ABS paying any money to Dr. Su.

Again, this email reached Bhargav who was in town and substantially made an appointment to visit Dr. Su and Tri-Valley University. Both the sender of this alleged email and the receiver of this email are inside of California. There is no interstate commerce effected. All the recipients' email-addresses are Bhargav's personal email address which Dr. Su guessed.

Government may argue that Gmail and Hotmail or yahoo.com email serve located at different state. However, these signals were never being revealed, surfaced, or read, processed – read eventually; and the receiving side is inside California. No such interstate commerce was effected. The Wire Fraud charge is missing fifth elements, the necessary of wire fraud.

For the insufficient evidence prove both element two of defraud of any money and element five of effect of interstate commerce. A judgment of acquittal shall be granted to this Count.

**Count 3. Wire Fraud.**

Counts of Wire Fraud alleged an I20 (Exhibit 12) of Bhanu Challajunda on Jan. 10, 2010. The initial I20 of Bhanu Challajunda also had PDSO's original signature. Page 1825, line 1-5.

The government had failed to represent any evidence that on Jan. 10th, 2010 there was any wire or any email transaction to prove the most important 4th element of wire fraud. Government witness Bhanu Challajunda testified under oath that she received this I20 from the Albright Consultancy. page 892, line 1-25. page 893, line 1-14.

There is no single evidence that on Jan 10, 2010 Dr. Su sent an email with this I20 to her or even to Albright Consultancy. There is no single evidence showing that the original I20 with TVU's PDSO's original signature was either mailed to Albright or someone from the consultancy picking it up – surely there is no evidence to prove it was sent through email or wire transaction.

Subsequently, government failed to give any evidence that I20 traveled through interstate commerce through wire, the necessary fifth element of wire fraud.

Finally, government witness Bhanu Challajunda testified clearly under oath that she did not pay anything to Tri-Valley University and/or Dr. Su, while receiving this I20 or related to this I20. (page 943, line 1-25. page 938, line 10-13. page 939, line 23-25)

She didn't even have any contact with Dr. Su – no evidence to prove defendant defrauding her any property or money. page 941, line 10-11.

For the insufficient evidence to sustain all three necessary elements of the offense, a judgmental acquittal shall be entered for Count 3.

Furthermore, I20 definition is a "Certificate of Eligibility for Student". The sworn words from the professional expert, Ms. Susanna Warner, the Director Head of SEVP, page 331, line 13-17. Government Certificates have no money value, wire fraud and mail fraud did not apply and cannot be used for prosecution. For this reason, defendant respectfully moves this Court to dismiss Count 3 in the indictment per Rule 19 of the Federal Crime Rule Provision.

### Count 4. Wire Fraud.

Wire Fraud count 4 charged: Exhibit 32 an I20 of Kalpana Challa, on January 27th, 2010.

Government witness Kalpana Challa testified under oath that she came to TVU and paid $1000 to register 3 courses: Medical Recording; Medic office management and statistic method. see page1421, line 25; page 1422, line 14-18; page 1424, line 22-24; page 1425, line 1-2. She also received a registration I20 referring her "continuing attending school" status. Page 1422, line 1; page 1423, line 1.

Her I20 was handed to her when she came to TVU campus to pick up her I20. There is no email, wire transaction occurred on her I20 with original PDSO's signature. Government failed to prove the important element of wire fraud - actually the defendant used the wire for the signed I20. Furthermore it also missed the fifth necessary element of wire between interstate commerce; mainly at TVU's office at California.

Again, I20 is the "Certification of Eligibility of Students"; itself has no money value and Wire Fraud should not be used for government "Certificate" related prosecution.

### Count 5 and 6. Wire Fraud. July 27, 2010.

### Count 7 and 8. Wire Fraud. August 31, 2010 for Count 7 and September 7, 2010 for Count 8.

Defendant was alleged to falsely sign another DSO's name on a Form I20 for a person described as S.A. (Count 5) and K.D. (Count 6) on July 27, 2010. (page 1783, line 11). She was alleged to have signed DSO "Wen Chao Wang" on both registration I20 and signed DSO name of "Wenchao Wang" on 8/31/2010 for student Mohammed Rigwan (Count 7). She was also alleged to falsely sign DSO "Wenchao Wang" on student Rajeev Betra's registration I20. The Government needs to prove every element of the charges beyond a reasonable doubt.

During the trial it was proved that on July 27th, 2010, Government sent decoy Anje Reddy D to TVU's office to register 3 courses for both S.A. and K.D. Both of their I20's were printed out at TVU's office and signed on the same day and handed to decoy Anje Reddy D and to the agents who were waiting outside TVU office. There were no email, no wire transaction on these signed I20 at all on that, but decoy picked them up. Government failed to prove the most important 4th element of the statute that there was the wire; in fact there were not.

During the trial, Government further proved that on 8/31/2010 Mohammed Rigwan's registration I20 with DSO signatures was also handed to decoy who was asked to leave TVU's office and was waiting outside the office by TVU's secretary. The I20 with original DSO signature were not sent by wire.

During the trial, Government also show that on 9/07/2010, undercover agent Rajeev Betra's registration I20 was also generated from TVU's office; signed and picked up by Mr. Rajeev Betra who came back three times to TVU's office. The I20 with original signatures were not sent by email, no wire travel.

All of these 4 counts of wire fraud missed the important 4th element of the wire fraud statute, but also missed the fifth element of wire fraud of "wire must travel and effect interstate commerce." All 4 I20 were generated, signed, picked up from TVU's office at Pleasanton, CA

Furthermore, all 4 counts of wire fraud alleged are related to I20s which, by definition "Certificates of Eligibility of student", are government certificates. Wire fraud statute shall not be used or applied for government certificate related prosecution. While all of the $1000 initial payments were for enrolling and registering 3 courses; the I20 itself has no money to defraud of. Government failed to present sufficient evidence or any evidence for those individual's payment or purchase of any I20.

For all the above reasons of insufficiency of evidence to prove elements two, four and five of wire fraud statute Judgment acquittal shall be granted for Counts 5, 6, 7 and 8.

At first place, Government failed to prove the "falsely" signing of another DSO on the I20 by Dr. Su during the trial. The "falsement" is based on an assumption that

Dr. Su signed another DSO's name without permission. Apparently, as the owner of TVU as well as the administrative head of president – the direct supervision of the registrar officer; she has the authority to sign during their absence. To exercise this authority if she did not have their permission or authorization, she would have signed "Susan Su for Wenchao Wang." However, if they gave her permission and authorization to her to sign their name in their absence, she shall sign their names directly.

The Government claimed there are "false" signatures based on the theory that she signed another DSO's name without their authorization. However, during the entire trial, there is no single evidence proved this assumption. The conviction is based on assumption or inference, not proved evidence. Therefore, a judgmental acquittal needs to be granted for this count.

### Counts 9-12. Wire Fraud: 9/20/2010 (C9); 9/24/2010 (C10); 1/7/2011 (C11, C12)

Defendant was charged with wire fraud of counts 9-12 on emails she sent to agents on:

Count 9: 9/20/2010. Email to Taylor. Re: Sparcha Agrawal's verification package

Count 10: 9/24/2010. Email to Taylor on K.D. verification package

Count 11: 01/07/2011. Email to Agent on M.R. verification package.

Count 12: 01/07/2011. Email to Agent on R.B. (Rajeev Betra)'s verification package

These four counts are all on the emails sent to agent clarify the ruse operation. Agents called from SF office saying that TVU's students were traveling back to US, but forgetting their I20 and stuck at SF and JFK airport asking Dr. Su to provide any verification of those students being TVU students in good standing status. Governments need to present evidence to prove each of the wire fraud statute elements beyond reasonable doubt. Each charge is also independent.

All the four emails were sent to the ICE agents who purported as officer at SF airport and JFK airport. Truth is that they were agents sitting at ICE office at San Francisco.

However, there is not a single piece of evidence showing that defendant Dr. Su intend to or need to really deprive/defraud any money from these agents which is a very important statute element of wire fraud the 2nd elements.

Furthermore, there were emails with attachments sent to ICE agent, but all agents in 4 operations were all at San Francisco office. There were no interstate commerce effected, no interstate wire. The fifth required element of wire fraud was completely missing.

Finally, during the trial there was no evidence proving Defendant's intent. In the ruse operation, Dr. Su apparently didn't know they were actually ICE agents and fictitious students. She purely wanted to help her students who were stuck at the airport, needing certification letter and paper work as soon as possible; never any criminal intent existing, nor proved. The third element of wire fraud statute, "knowingly and intently to defraud or cheat" is missing and insufficient evidence to support.

A Judgment Acquittal shall be entered for all counts of 9, 10, 11, and 12 due to Government's insufficient evidence to prove the elements of 2, 3, and 5 of wire fraud statute.

### Counts 13 and 14. Mail Fraud: 12/2/2006 (Count 13) and 2/10/2009 (Count14)

Defendant was charged with Counts 13 and 14 mail fraud on 12/23/2008 and 2/10/2009 respectively in violation of Section 1341 of Title 18 of United States Code (page 1778, line 18-25). The Government must prove each of the following elements beyond a reasonable doubt: First, that the defendant knowingly participated in, devised or intended to devise, a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations or promises. Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence or were capable of influencing a person to part with money or property. Third, the defendant acted with the intent to defraud, that is, the intent to deceive or cheat. And fourth, the defendant used or caused to be used the mails, namely, anything to be sent or

delivered by the postal service or by any private or commercial interstate carrier to carry out or to in attempt carry out any part of the scheme.

Defendant was charged with sending mails to SEVP on TVU's I-17 petition on 12/23/2008 and 2/10/2009.

However, the best evidence government presented is an email with header deliberately cut off a little bit at trial of Ms. Su in response to SEVP Request of Evidence with the email and its attachments of Ms. Su sent to SEVP on 12/11/2008. Redd: Exhibit 3. page 315-316.

"I am writing to you in response to the email." "At the same time, we are submitting the following three evidence items: Item 1." "We made a mistake by inputting Mr. Wang's legal name Wenchao Wang with his nickname Vince Wang." "We attached the I-17 update form." "Item 3. Three of the PIDSO's of TVU have all taken their DSO web training class. We submit the statements of all three PIDSO's for your review." Finally, "The originals of these documents are mailed to the instructed address with first-class mail."

There was no single evidence proving that Dr. Su or anyone from TVU mailed anything on Dec 11th or Dec 23, 2008. The best evidence government introduced is an email saying that a letter would be mailed. It was an email, not a cover letter for a mail which official mail will always require. There are no evidence showing who sent the mail and when the mail was sent, or to prove if the mailing has ever happened. There are no evidence showing who sent it or physically delivered the package to the SEVP office, or when.

The assumption of Dr. Su or even anyone from TVU sending the mail was based on presumption of inference based on another email. A judgment of acquittal shall enter for Count 13 because of insufficiencies of evidence to prove the basic most important elements – the 4th elements of sending a mail or used a mail as the essential part of the scheme.

Further, the entire communication was about TVU's I-17 petition – by definition a government certification process. Government Certification has no money value. This mail, whatever proved or not, has not defrauded the Government any money. The defendant further moves the court to dismiss Count 13 from the indictment.

**Count #14: Charged Defendant committing mail fraud on Feb 10th 2009.**

The best evidence Government presented at trial was again an e-mail interchange of discussion between Ms. Su and Mr. Barry Kobe, the SEVP adjudicator, saying "Dear Mr. Kobe, per our phone conversation, here are the three originals of the three articulations" (page 320 Exhibit 4), with 3 attachments of letters of course transfer agreement.

There are not any evidences showing or implying that those attachments were mailed to SEVP. In fact, SEVP never received any hard copies of official copies of those "Articulation Agreements" since they were not mailed. Never sent either, never obtained original signatures. The Government presented in trial was the attachments during a discussion e-mail exchange between Dr. Su and Mr. Kobe. Mr. Kobe never testified and there is no one to tell what his discussion was with Ms. Su on the phone. Ms. Su was sowing him a format of letters for Bachelor of Science Program as seen in the attachment was acceptable to SEVP or not.

There were no mail receipts from TVU side, nor evidence of receiving stamp or receiving hard copies from SEVP sides were presented at the trial. A judgment of Acquittal shall be granted on Count 14 due to insufficient evidence to prove the most important element of mail fraud statute - the 4th element of sending a mail.

Furthermore, these entire e-mail did not defraud SEVP or Mr. Kobe any money, another necessary element the statute is missing. Also, those are all Government certification related issues; mail fraud cannot be used for any Government certification related prosecution. Dismissal of mail fraud Count #14 should be granted.

**Count 15: Conspiracy to Commit Visa Fraud**

Defendant is charged with committing conspiracy to commit visa fraud in or about Feb. 2009 through Jan. 19th 2011, in violation of 18 United States Code Section 371, p150, p1779-1780.

Government needs to prove beyond a reasonable doubt the following elements: First, there was an agreement between two or more persons to commit visa fraud.

Second, the defendant became a member of conspiracy knowing of at least one of its objects and intending to help accomplish it. Third, one of the members of the conspiracy performed at least one overt act on or after Feb 2009 for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

On page 1839-1842, Government also stated that "There had to be an agreement between two or more persons. And the way it is charged is: to commit visa fraud you had to find there was agreement to commit visa fraud". The best evidence Government presented at the trial was a Recruiting Memorandum between TVU and ABS Consultancy to recruit students from India and Southern Asia. However, as a standard legal recruiting contract, there is not single line in the entire document stating "to commit visa fraud". There is only one item mentioned that TVU is responsible to issue I20 to admitted students while ABS's responsibility to scrutinize new students and prepare the document package for admission. Government made as an accusation that TCU's SEVP approval was fraudulently obtained (page1840, line 21-24)

However, during the trial, the Court appointed professional expert, SEVP Director Head – Ms. Susanna Warner testified the definition of I20 as the "Certificate of Eligibility for Students" (page 331, line 16. page 330 line 13-15); "An I-20 is an immigration documentation that's created by a school official, and that's what a student uses when they need to get a visa to enter the country as a student."

However, Government's own TVU student witness testified at the trial under oath that (page 1362, line 14-15) TVU's majority classes were taught in virtual classroom for face-to-face class meeting, students can "do it from anywhere you want"; do not ever need to or "have to come all the way to the U.S.". Students do not need a F1-visa to study TVU's courses.

In that sense, TVU is capable of, and was granted the authority to bring students in F1 visa. But that agreement was on India and South Asia's students; students can study at anywhere, not even need a F1 visa. To commit "F1 Visa Fraud" is far away beyond any content of this agreement.

For the insufficient evidence to support element one of the Conspiracy of Visa Fraud statute, a judgment acquittal shall be entered for this count.

**Counts 16, 17, 18 19, Visa Fraud**

Defendant is charged with committing visa fraud on July 27th, 2010; August 31st, 2010, and September 7th, 2010; in violation of 18 United States Code Section 1546 (page 150, line 23-25; page 151, line 1)

Government needs to prove all _____ elements of visa fraud beyond reasonable doubt (page 1785, line 4-12)

And the best evidence Government presented are:

Count 16:   Registration I20 of S.A.        on 07/27/2010;

Count 17:   I20 of K.D.                           on 07/27/2010;

Count 18:   I20 of M.R.                          on 08/31/2010;

Count 19:   I20 of R.B.                           on 09/07/2010.

However, during the trial, the Government themselves admitted that all four of these used fictitious student are all F-1 visa holders ~~~ F1 students whose SEVIS record were "terminated", who already had the F1 visa from a previous school.

Government alleged that visa fraud is on the I20 itself (page 1845) that was falsely signed. However, there is not a single evidence proving these I20 were "Falsely" signed, which means that all those 4 evidences are all already had a F1 visa who had already been admitted to a previous school, and had a I20 from previous school; and went through the F1 visa interview process; and qualified for a F1 visa; come to US to study or for some other reason SEVIS record was terminated.

None of these 4 students had their F1 Visa from TVU's I20 and their F1 visa and SEVIS record are two separate things.

Government then _____ argue that all 4 of them registered classes at TVU to maintain their SEVIS record, or re-activate their "terminated" SEVIS record, to "continue attendance" which is truthfully entered since all of them were indeed registered into classes, and were told to "catch up with classes"

The SEVIS well-qualified expert, Director and head of SEVIS division, Ms. Susanna Warner testified clearly that SEVIS record and F1 VISA are two separate

- 16 -

and independent things, while SEVIS record I20 was from SEVIS (page 388, line 21; page 388-389), but F1 Visa was issued by USCIS.

What happened with student's I20, "terminated", "Initial", "Continue" or what so ever have no effect, and basically nothing to do with student's F1 Visa. Ms. Warner even gave an example: even though a student completed his/her study and went back to India, SEVIS maybe "terminated", but his/her Visa is still valid for its original assigned time of 10 years. Clearly, those registration, active SEVIS record have no effect, nothing to do with student's F1 Visa.

An acquittal shall enter to the returned verdict, on the ground of evidence being insufficient, and also major mismatch between the proof and the crime charged. U.S. v. Area, N.D.N.Y. 1996, 918, F. Supp. 561.

Defendant further moves the Court to dismiss these 4 counts on the ground of double jeopardy.

## Count 20: False Document, September 24th, 2010

Defendant is charged with using a false document on 09/24/2010, in violation of 18 United States Code Section 1001, Subpart (a) (3), page 151, line 2-4. Government needs to prove each of the following elements beyond a reasonable doubt:

(1) One, the defendant made or used a writing which contained a false statement in a matter within the jurisdiction of the Executive Branch of the United States, namely the Department of Homeland Security.

(2) Two, the defendant acted willfully, that is, deliberately and with knowledge that the statement is untrue.

(3) Three, the statement was material to the activities or decision of the Department of Homeland Security; that is, it had a natural tendency to influence or was capable of influencing the agency's decision or activities, page 1786-17xx.

Government alleged an e-mail and its attachments Dr. Su sent to ICE agent Taylor on 09/24/2010 regarding a ruse fictitious student K.D's good standing student status verification package. The entire operation is a government ruse operation.

There was no student at SFO airport; there was no admission either, nor any airport officer's decision. The element "One" of "in a matter within the jurisdiction of the Executive Branch of the United States, namely the Department of Homeland Security, and element "Three" of "the statement was material to the activities or decision of the Department of Homeland Security" do not exist.

Furthermore, during the trial, the ICE agents stated that on Jan 19th 2011 during the raid, when ICE agent told Dr. Su that those students were faked, so did these airport phone calls Dr. Su's was in shock and disbelief – so she didn't know these students were faked until Jan 19, 2011. During the trial, TVU staff member Vishal Dasa also made direct admission under oath that he prepared those verification package documents for Dr. Su on 09/24/2010. There is no single evidence proving that Dr. Su knew any untrue statements in the package --- the second elements of the false documents statute.

A judgment of acquittal shall be granted on Count 20 on the ground of insufficient evidence on all three elements.

These e-mails on 09/24/2014 on K.D.'s verification package have been prosecuted with wire fraud in Count 10. Defendant respectfully moves the Court to dismiss this count of indictment due to double jeopardy.

### Count 21.  False Statement 01/17/2011

Defendant is charged with making a false statement to a government agent on 01/07/2011, in violation of 18 United States Code Section 1001, page 151.

The Government must prove each of the following elements beyond a reasonable doubt:

(1) Frist, the defendant made a false statement in a matter within the jurisdiction of the Executive Branch of the United States, namely the Department of Homeland Security.

(2) Second, the defendant acted willfully, that is, deliberately and with knowledge that the statement is untrue.

(3) Third, the statement was material to the activities or decision of the Department of Homeland Security; that is, it had a natural tendency to

influence or was capable of influencing the agency's decision or activities, page 1787. Also the statement made was not by mistake.

However, during the trial, it was proved that Dr. Su made that statement by mistaking a real TVU MSEE student named Ragwan Mohammad, (reversing governing fictitious student name Mohamed Ragwan. At trial, it even proved that this real TVU student Ragwan Mohammad resided at Chicago at the time of trial.

For this reason, the judgment acquittal shall be entered for this count on the ground of insufficient evidence.

Because it was the ruse operation, defendant apparently didn't know that the agent was asking for a fictitious student. She was thought to be the real student Ragwan Mohammed who was stuck at airport. Government has failed to prove the second necessary element of the statute "knowingly, deliberately, with knowledge that the statement is untrue".

Government alleged that Dr. Su made a false statement to ICE agent on 01/07/2011 about a fictitious student Mohammad Ragwan's class attendance. Fictitious student Mohammad Ragwan was a randomly selected SEVIS record "terminated" student who as a mask- behind the phantom was really another ICE agent. Government sent decoy A.D. to TVU office, saying that Mohammad Ragwan was his friend, and made through TVU's admission and registration with office staff T.T. and V.D.

On Jan 7th, Agent Taylor called from S.F. ICE Office claimed TVU student Mohammad Ragwan and his friend were stuck at JFK airport in N.Y and forgetting their travel I20, asking Dr. Su to verify student status. After three hours of unable to verify, ICE agent came to TVU office at 2:30pm in the afternoon to ask Dr. Su for the prepared verification package. Dr. Su could not find student's class attendance record, but mentioned to Agent that she knew Ragwan Mohammad who did attend classes on campus.

Also, the best evidence of Dr. Su made any statement was the hearsays from the Agent. With every operation ICE with both audio and video recordings, there is so single direct evidence of a recording of Dr. Su's voice saying so or her direct admitting of saying anything.

**Count 22 and 24. Alien Harboring. Vishal Dasa (C22), Anji Diri Sandal (page 1788, page1847-0849)**

Defendant is charged with Alien Harboring of Counts 22 and 24; with harboring an alien in violation of Section 1324 (a) (1) (A) (iii) of Title 18 of the United States Code. The Government needs to prove each of the following elements beyond a reasonable doubt. First, the person V.D. and A.D. were alien; Second, V.D. and A.D. were not lawfully in the United States; Third, the defendant knew or acted in reckless disregard of the fact that V.D. and A.D. were not lawfully in the U.S.; Fourth, the defendant harbored, concealed, or shielded from detection V.D. and A.D. through employment at TVU for the purpose of avoiding this detection by immigration authorities or attempted to harbor, conceal, or shield from detection V.D. and A.D. through employment at TVU for the purpose of avoiding this detection by immigration authorities and did something that was a substantial step toward committing the crime; and Fifth, that the defendant acted for the purpose of commercial advantage or private financial gain. (page 78)

Government alleged that information of both V.D. and A.D. input in SEVIS are false and that both V.D. and A.D. did not physically attend any classes, but they attended all classes online while working long hours at TVU office. (page 1847).

First of all (page 1846), during the trial, both V.D. and A.D. testified that they were entering U.S. on F1-visa and they both were in the United States lawfully. Vishal Dasa testified under oath, subjected to both cross and recross-examination, that he entered U.S. with legal F1 visa from Antioch University's I-20 in Oct, 2008. Then he transferred to International Technological University, studying for two semesters; then transferred to Tri-Valley University in September of 2009. (page 788, line 4-9, page 791, line 5-9; page 842, line 3-25)

A.D. also entered the U.S. legally in F1-visa with I-20's from International Technological University (ITU) in January of 2010. (page 1148 line 14-15; page 1279, line 22-25 (1/27/2010).

Government failed to prove the 2nd required element of Alien Harboring statutes. In fact, there is no such element existing.

To prove the third element that Dr. Su knew both V.D. and A.D. were not legally in the U.S., the best evidence the government offered is that both of them were taking online classes. None of them attended any physical classes due to the length of hours working at TVU's office. Furthermore, Federal Control law states that "At least one course per term a F1 student can take online classes." Federal control law further states that a F1 student working on-campus is entitled to reduce course load.

At trial, Vishal Dasa testified that he registered three courses, has physical class meeting, the other two have no physical class meeting by an instructor; but studying the course material online. Dr. Su actually switched him to another two courses which were taught live by professors and required weekly class meetings, but he didn't have the background in the subject, and actually found it was too hard for him to catch up on class material and do homework. But he was auditing them for that term, Fall 2009, and still studied those courses slowly in next term of 2010. With class attendance counted toward 10% of the course grade, as Federal law provision on student status is as long as student makes progress toward their graduate degree study, they shall be in status.

At trial, the professional expert, Directory Head of SEVP, Ms. Susanna Warner testified if a student in the progress of graduate study even "pauses" or "waiting" period, the student is in status. Vishal Dasa actually was legally in United States during 9/2010 – 10/2010, while he worked at the TVU office. In November, ICE agent administratively arrested him, subjecting to immigration court. His case is not settled until now. He is still legally in the U.S. There is no evidence that presented could show Ms. Su knew anything else that he is not legally in the U.S.; if such knowledge shall be false. There is no evidence or insufficient evidence presented by the government on Dr. Su's "knowing" Vishal Dasa was ever not legally in the U.S., the third necessary element of Alien Harboring Statute.

To prove the fifth element of the statute that the defendant harbored, concealed, or shielded from detection V.D. and A.D. through employment at TVU for ..." (page 1788); the best evidence the government presented was the hearsay testimony of TVU student Santosh Ignatius that Dr. Su locked TVU's office door for one hour during lunch hour. The evidence is insufficient first lunch hours is naturally no immigration agent working during lunch hours. Second, ICE agents have proved to be very good at breaking the locks (Jan 1, 2010). And after all, this evidence is hearsay; also based on

inference that Vishal Dasa was inside. U.S. attorney never asked Vishal Dasa himself to admit or confirm if he was indeed inside or went outside for lunch with Dr. Su for business. For A.D., there is simply no evidence on being locked inside the TVU office.

If there is no evidence or insufficient evidence to sustain one required element of the Alien Harboring statute, the guilty verdict shall be set aside, and a judgment acquittal shall be entered for these two counts.

A Judgment Acquittal needs to be entered for these two Alien Harboring counts due to the insufficient evidence on all three necessary elements of the statute

### Count 25, Unauthorized Access of a Government Computer

Defendant was charged with committing unauthorized access of a government computer in or about Feb, 2009 through Jan, 2011 in violation of 18 United States Code Section 1030, Subpart (a) (3). page 151, line 14-17.

The element of statute of 18 Sec 1030 (a) (3) are: First, the defendant intentionally accessed a nonpublic computer of the Department of Homeland Security; namely the Student and Exchange Visitor Information System, also known as "SEVIS". Second, the defendant accessed that computer without authorization, and third the computer accessed by the defendant was used non-exclusively by or for the United States government, but the defendant's conduct affected that computer's use by or for the U.S. government (page 1789-1790).

However (page 1849-1852), the government charged Dr. Su not for "unauthorized access count" but in conjunction with another statute "aiding and abetting" theory that Dr. Su gave access to TVU's students staff at office, V.D. and A.D., there is no such law with these joint elements.

The element of "aiding and abetting" (page 1774), to prove the defendant guilty of aiding and abetting, the government must prove beyond a reasonable doubt that first, the particular crime was committed by someone; two, the defendant knowingly and intentionally aided, counseled, commended, induced, or procured that person to commit each element of the particular crime; and three, the defendant acted before the crime was completed. It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the crime.

The act alleged by the government was Dr. Su logged in to the laptop and gave the TVU office staff V.D. and A.D. a computer screen to input student name, address, and nationality information.

To apply the law, the statute of "unauthorized access computer" Code 18, Section 1030 (a) (3) each element has to be met or proved beyond a reasonable doubt committed by the defendants. It is very obvious even the prosecution admitted that Defendant Su has the "authority to access that computer"; missing the most important 2nd element of the Statute 18, Section 1030 (a) (3). An element is missing then the statute simply cannot be applied, the account needs to be dismissed. The prosecution cannot borrow any elements from another statute "Aiding and Abetting" to fulfill the missing elements of this statute. Each statute assured needs to be proved each one of its elements independently, specially at criminal charges. No one is allowed to in conjunction partial elements of independent statutes to accuse, or even to apply and convict anyone of any act. In other words, in order to convict any defendant, both Code 8 Section 1030 "unauthorized access computer" and Code "aiding and abetting", the prosecution needs to prove all three elements of Code 18 Section 1030 and Code 2 ; a total of six elements for that accused act. Any one of the six elements was missing, both accused crime or violation needs to be thrown out.

The best evidence government had was that Dr. Su gave office staff V.D. and A.D. a logged in SEVIS page on the laptop screen for them to input school designated information. There is still insufficient evidence to constitute the offense fit with the statute.

To apply the statute 18 Section 1030 the law, now defendants are V.D. and A.D. who accessed the SEVIS computer without authorization. However, at trial, the evidence government presented was their access of SEVIS system and input student information including a school provided student address per Federal law provision, but not any "unauthorized access" because the alleged access is authorized – apparently authorized by Dr. Su herself by log in SEVIS and gave them the log-in screen. As TVU's owner and president, Dr. Su did have the right and authorization from SEVP to give any U.S. citizen or a permanent resident the access to TVU's SEVIS student data system by creating them a TVU DSO account and password. There is no evidence showing what is the special procedure or approval needed from SEVP for school to give an F1 visa holder office staff the access; and furthermore what Dr. Su did by giving them the log-in screen is or isn't in compliance with that procedure.

In summary, Government has failed to prove the most important elements of the statute that defendant or anyone alleged did access Government's computer without permission. A Judgment Acquittal needs to enter on the count of "unauthorized access of a Government computer".

### Count 26, 27, 29, 31, 32, 34, 35. Money Laundering

Defendant is charged in counts 26, 27, 29, 31, 32, 34 and 35 of the indictment with money laundering of Section 1957 of Title 18 of the United States code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt. First, the defendant knowingly engaged or engaged or attempted to engage in a monetary transaction. Second, the defendant knew the transaction involved criminally derived property. Third, that property had a value greater than $10,000. Fourth, the property was, in fact, derived from visa fraud, and fifth, the transaction occurred in the United States. (page 1790, line 17-21; page 1791, line 1-3). The way it is alleged is that the property was derived from visa fraud. The property itself has to have been derived from visa fraud. (page 1853, line 18-21).

Government presented at the trial that Agent Mackey go for a year long research on TVU's finances and Mr. Rhyne summarized as follows:

      Count 26, Mercedez Benz, Total Amount: $36,000, F1: $11,000;
      Count 27, Murrieta Blvd, Total Amount $78,000; F1: $22,000;
      Count 29, Boulder Ct. #800, Total: $161,000; F1: $19,000
      Count 31, Boulder Ct. #700, Total: $261,000; F1: $140,000.
      Count 35, Germano Way, Total: $1,200,000; F1: $239,000
      Count 34, Germano Way, Total $600,000, F1: $306,000
      Count 32, Victoria Ridge, Total: $700,000, F1: $319,000
      (page 1645-1665)

Agent Mackey went through a great length of effort identifying SEVIS data base with TVU students' fee invoice and receipt. (page 1628-1629). However, it didn't show or no research and data on all of these identified F1 students invoice. How much of them were F1 students who enter U.S. with TVU's I-20, and whose F1 visa were from other university's I-20. Furthermore, the F1 students with TVU's I-20 in each transaction of the alleged money laundering charges; how many F1 students with TVU I-20 was less than $10,000.

Government's best evidence presented in money laundering charges are VU's student witness Bhanu Challlagundla, (page 1672-1675). Government presented a two credit card transaction of $1,000 each receipt and assumed that Bahnu Challagundla's payments to TVU; alleged visa fraud preceding. However, during Ms. Bhanu Challagundla's own sworn under oath testimony when she had her I-20 from Tri-

- 25 -

Valley University for her F1 visa interview, she did not pay any money to Tri-Valley University. (page 942, line 19-25; page 943, line 1-24). She paid $250 (30,000 rupees) to Albright Consulting (page 935, line 10-24). She came to the U.S. on May 5th, 2010. She then paid a cashier's check of $2,365.00 to Keerthana (page 944-945). It never showed if Keerthana has paid to Tri-Vallley University or not. She was then qualified to take a Fall, 2010 term break. In Fall 2010, she did not pay anything (page 950, line 4-P8). In Summer 2011, she was enrolled and registered for 3 courses. After initial internet access problems, log-in problems, she eventually was able to log in (page 921-922), and she was also able to view the class meetings. She also was able to submit her homework to the system (page 923, line 1-22). She also did graduate research for one of her courses (page 924, line 1-9). In Nov, 2010, she came back to TVU to register class again for Spring 2010. After the Fall break, she was not sure if her credit card has been processed for the Spring 2011 term tuition or not (page 948, line13-), the $1,000 first installment. Agent Mackey showed that her credit card was processed. She did not receive any class instruction for this credit card payment. The reason is ICE shutting down Tri-Valley University in Jan. 19, 2011. But Government claimed that here was a $2,000 credit card receipt from her visa application. That time she was in India, not even owning a credit card in her name yet.

Government failed to prove these properties were, in fact, derived from visa fraud. All the seven money laundering charges shall be granted Judgment Acquittal due to government's insufficient evidence and inconsistent, self-conflicting fact from Government witnesses.

Furthermore, it was proved during the trial that due to its newly established school, TVU did not get many students who received F1 visa on TVU's I-20. About 10% of all TVU's newly applied international students from overseas were granted F1 visa. Total is less than 50 students, and majority of students only paid $1,000 as the first installment fee. The F1 visa related TVU's students' tuition were less than $100,000. The number of how many F1 students who entered the U.S. with TVU's I-20s can be easily found from SEVIS database. Why this data is missing from the Government?

Government also failed to present any evidence to connect F1 student's tuition payment which for courses into the F1 visa. Student Bhanu Challagundla clearly states she wanted to come for a better education, especially in Pharm D. program,

which is a unique program TVU had. Apparently, she only made $2,365.00 Cashier's check to study for these courses after she obtained her visa. She did study . . . . . . . interview, . . . . these courses; she shall be on SEVIS status and her SEVIS shall not be "terminated," even though at the "waiting" period.

Many Government student witness; TVU student witnesses testified they paid tuition for the courses and did enroll in courses and study for the courses.

During the entire trial, Government called 7 TVU student witness. Only two among these seven were students who obtained a F1 visa with Tri-Valley University issued I-20. Bhanu Challagundala and Santosh Ignatius. However, Ms. Challagundla testified that she did not pay any money to TVU for the I-20 issued for her F1 visa interview, but paid $250 to Albright Consulting. Mr. Ignatius testified that he only paid fees to government for the I-20 issued (page 1350, line 15-19). No payment to TVU.

The rest of the five TVU student witnesses:

1) Vandana Satija is a permanent resident, was in H4 dependent visa. She testified clearly multiple times that she wanted to be on her husband's H1, and did not want to change to F1 visa. (page 17, line 18-19; page 190, line 1-17, page 211, line 9-23, but she really wanted to take online courses from her home to help her husband and may have CPT license. page 189, line 12-13; page 188, line 1-2, page 175, line 14-19, page 179, line 1-2; page 174, line 20-25; page 191, line 24-25; page 197, line 17-18; page 211, line 17-18, and her payments were all just for taking courses at TVU, so did the refund because of courses too.

2) Gvernment TVU student witness number 2: Naveen Kundur. He graduated from Northern Polytechnic University (NPU) at Fremont in 2009, and joined TVU to continue Ph.D. student in Summer, 2010 (page 1566, line 11-25; page 1560-1569, 1570). His F1 visa was obtained with I-20 issued from Oklahoma City University (page 1567). He paid tuition for three courses, attending class meetings, and also worked at TVU office. In Fall, 2010, he paid only $1700 for another 3 courses.

- 27 -

3) Student No. 3: Kalpana Challa obtained F1 visa with I-20 issued by California Lutheran University.

4) Student Witness No. 4: Anje Dirisanala obtained F1 visa with I-20 issued by International Technological University, and student witness

5) No. 5: Vishal Dasa obtained F1 visa with I-20 issued by Antioch University. All five among seven government called TVU student witnesses had F1 visa not with TVU issued I-20s.

## 1.   Insufficient Evidence and Facts to Support the Indictment

At trial, the Government has failed to prove facts sufficient to constitute the offense _____ alleged in the indictment or any crime at all.

The entire indictment basically alleged that Tri-Valley University violated the law in the following areas:

A. TVU's I17 SEVP approval is improper

B. TVU then admit International Student without regard to their academic qualification and intend of pursuing a full course of study.

C. Government alleged TVU didn't have class or TVU student didn't attend class meetings.

D. TVU student's mark sheet issues.

## A. On the Allegation of TVU's Fraudulent SEVP I17 Approval

At the trial, the government went a great length and effort on the theory of TVU's SEVP approval was fraudulently obtained. Government mainly alleged the following several areas in the I17 form: Item 21: (1) TVU's students No. (2) TVU's faculty member number who taught classes government presented TVU's three faculty available but having not taught any class. (2) TVU's admission criteria and

most importantly, a huge effort was on the issue of Articulation Agreement with CFU and an amendment agreement with SFSU.

However, the trial has just proved the opposite. The trial just proved TVU's proper SEVP approval, as well as TVU's honest, truthful representation and submission of each item on its I17 form.

The best evidence the government presented to overturn SEVP's I17 approval primarily on the issues with the Articulation Agreements. Starting with P255-256, the Federal regulation governing the "Eligibility of I17 Petition is 8 Code of Federal Regulation Section 14.38 CFR214.3 (a)(3)(i). The petitioner to be eligible for certification must establish it: (page 256, line 17-25)

 i. "is a bona fide school". Ms. Warner further said that the school needs a name and an address. TVU's I17 Petition having the name of Tri-Valley University and address at "4465 Stoneridge Drive, Pleasanton, Ca" which passed the inspection of SEVP's on-site visitor. P265-266.

 ii. "is an established institution of learning or other recognized place of study, as Ms. Warner further explained that means that "the school has some history behind it, graduated students something like that". At the time of SEVP approval, TVU already has graduated students. There were the logical operator "OR", having "OR other recognized place of study" means the school is accredited or has something that is akin to accreditation.

 iii. Process the necessary facilities, personal and finance to conduct instruction and recognized courses (page 257), as Ms. Warner explained, which further means that "the school will not going to go out of business quickly, that they actually have the ability to conduct instruction." TVU did not go out of business and did have the ability to conduct classes.

 iv. Finally, "in fact, engaged in instruction in those courses." During the trial, it was proven that at the time of application, in year of 2008, at least Dr. Su was teaching at least three courses. TVU, in fact, was conducting instruction.

At trial, it was proved that TVU did meet all of the ABCD of the minimum eligibility of I17 petition.

Now, there are some "special requirement" aside from the eligibility (page 258, line 17-19, ........ ............ .... . More accurately, as Ms. Warner states a special permission of SEVP (page 258, line 22-23). "If a school is not an accredited school or a recognized place of study, we permit those schools to get three articulation agreements from schools that are accredited that essentially vouch for that school is good" This is actually SEVP's special permission for schools that have not graduated students yet to fulfill Federal Control law of Eligibility 8 CFR214.3(a)(3)(i)B. "is...or other recognized place of study. First of all, TVU already graduated students, already proved to be "an established institution of learning," already meet the minimum eligibility requirements.

However, at TVU's on-site visit, TVU did state that TVU submitted additional documents (page 298, line 11-18) of TVU's collaboration with several universities including CFU, SFSU, and EUM (page 295, line 1-13; page 298, line 15-17). Also made truthful statement of such submission as page 297, line 18-25: *checked with a "X" mark.* "Document in Requirements for schools not..." and X'ed "Schools petitioning for F1 classification" further honestly stated that TVU submitted to SEVP on-site visitor: "Letters from Three Accredited Institutions of Higher Education that have accepted Transfer Credits of Petition School." TVU made truthful representation and honest statement that its submissions were just the "Letter for course transfer acceptance" which were reviewed by the acceptance university's faculty member who developed and taught these courses and approved by the appropriate administrative authority as testified by Prof. Liou from SFSU. They are not the Articulation Agreements which has to be written in the receiving university's letter head and for Central Florida University it has to be signed by the VP of legal counsel and the president testified by the VP of CFU. *TUU's I-17 Form did not check the "Articulation Agreement" item box.*

At trial, it also shows that SEVP's official approval with SEVP official stamp was based on these submissions of letters of course acceptance letters with original authority's signature. *not any amendments which are for B.S. degree.*

Government prosecution alleged and also put a lot of effort on two email attachment (one is an amendment with SFSU and another one with Central Florida University CFU) which Dr. Su sent during a discussion with SEVP judicator Mr. Barry Kobe on the Bachelor of Science program. There is actually no copy of SEVP received side to show that any one of these documents had ever been mailed to, or received by, or even used by SEVP for the approved. In SEVP's official TVU approval record, there isn't a single mention of the "amendments" neither received, nor used.

During the trial it shows that Dr. Su did not move forward to the next step further to obtain an original signature of Prof. Liou who is actually proved at trial to be willing to help Dr. Su. During trial, government did not provide a single proof of they were ever mailed to SEVP, no received hardcopy from SEVP. All prosecution had is an email attachment during an intermediate step of discussion of Ms. Su with SEVP.

Furthermore, court acknowledged professional expert, SEVP's Directory Head Ms. Susanna Warner testified that (page 311, line 1-25): If there is "anything in the petition SEVP don't think is correct" SEVP will send a Request of Evidence, RoE to school to ask school to correct it, "to give the school the opportunity to correct it." Government have showed at trial that SEVP only sent one RoE to TVU during the entire TVU I-17 approval, and that RoE was on the one DSO's nick name issue. SEVP did not think there is anything incorrect with TVU's honest submission of the "Letter of Course Transfer Acceptance" as the additional documents for jurisdiction. There were not any RoE on those letters at all.

Government claimed TVU's 1-17 was fraudulently obtained with the allegation that TVU submitted false information on its I-17 Petition From – mainly issues were on the areas of 1). TVU's student (confusion); 2). TVU's faculty confusion; 3). On TVU's admission criteria; and 4). TVU's PDSO/DSO.

However, during the trial it was proved that TVU had been exactly following SEVP's instruction on each one of those alleged areas and SEVP's approval of TVU's 1-17 petition was proper.

First, on TVU's student, TVU's original input on Item 21 at I-17 Form; per I-17 Petition Form Instructional manual; shall be "the current year enrolled students, if a school didn't keep a record of these number, it shall be estimated" was exactly following SEVP's I-17 User Manual , year 2008 annual estimate student to be "30." page 269, line 21-25. page 270, line 14-18.  And annual courses to be taught at year 2008 is 4 or 5.  These student number was further confirmed by SEVP on-site inspector Mr. Cory Well to be "25" with average class of "10 students. Page 286, line 10-12. Government witness ICE agent with all of the training and experiences, subsequently knew very clearly that those mistakes are the actual enrolled student number of year 2009. page 690, line 9-25; page 691, line 1-3; line 19-22; page 694, line 24-25; page 695, line 1-2; page 761, line 9-13; and SEVP has no limit on any approved school's future growth student. However, he testified at the beginning at first impression, he misunderstood that was TVU's future approved and allowed enrolled student number of 30, to cause this whole investigation, indictment, as well as trial.

During the trial, it also shows that, on TVU's original I-17 form, per I-17 Form Instruction Manual on Item 21 the annual number of instructor taught or served as graduate advisor estimated to be "9." page 269, line 21-25; page 763, line 14.

During SEVP on-site visit, per SEVP instruction document of "How to prepare a site visit" Attachment A "to submit teaching staff who is currently able to teach in the future." page 712, line 15-16; page 747, line 15-19; page 748, line 15-18. TVU submitted a listing of future available instructor of "22" page 280, line 11-12. While these information was aimed at the school's ability of conducting these instructions; the Item 21 mainly report infer what was the conducted instruction – they were two separate areas SEVP was looking for, also instructed its petition school to submit. TVU followed precisely these SEVP instructions; made truthful and honest representation and submission on these dates. It also can be clearly calculated that based on TVU's truthful information that 22 available instructor, 9 instructor already taught or serve as graduate advisor, there shall be as 22-9=13 instructor who are available to teach but have not taught classes yet. During the trial, government proves those available instructors who testified all came to Dr. Su's house for TVU's initiative party; qualified and available to teach, but have not teach yet. page 565, line 2-3; page 566, line 20-21; page 517, line 11-13; page 557, line 12-13; page 563, line 18, line 12,

- 32 -

line 17-19; page 559, line 23-24; page 564, line 1-25; page 446, line 4-5; page 448, line 2-18; page 456, line 8-9; page 470, line 4-24.

Third is on TVU's admission criteria; government alleged that TVU "admit foreign student without respect to qualification." page 267, line 16-21. TVU's I-17 form Ĩ^ρu⁺ TVU's admission criteria as "Requirements for Admission" as in Paragraph 18 of TVU I-17 Petition Form – refer to TVU Catalogue which detailed TVU's complicated admission criteria as well as required documents for different degree program, as well as different nationality or visa holder, such as US citizens, green card holder, H1, H4, B1, B2, J1, J2, F1, and F2. At trial Ms. Susanna Warner also testified about SEVP's required admission which was verified at TVU's on-site visit. P287, L 5. "How do you verify student eligibility when issuing Form I20 for initial attendance," The answer provided: "Review of transcript from prior school and acceptable GPA. Also check SEVIS site for student's eligibility, passport, Visa, I-94."

Government apparently was not alleging TVU's I-17 form admission criteria having any inconsistencies with SEVP approved or verified or required admission criteria; but to allege that after TVU's SEVP approval. TVU admitted international students without regard to their academic qualification or intention to pursue a full course of study." At time of TVU I-17 Petition for admitting international student, TVU has not admitted any international student yet. Government did not provide any evidence, nor any allegation that incompliance of TVU's international student admission criteria with SEVP requirement or regulation. As the SEVP regulation stated, page 243, line 17-19; page 245, L2x; also Dr. Su certificated to understand "unless this institution fully complies with all terms as described on this form; approval may be withdrawn pursuant to 8CFR214.4." page 271, line 18-19. If a school is not in compliance with anything stated in the I-17 Form, the approval will subject to withdrawal. However, TVU's admission issue is actually an irrelevant item with TVU's original I-17 approval.

Government further alleged TVU's PDSO/DSO was not intend to be compliant with Federal Law by not fulfil their responsibility of DSO later. Again government alleged issues were after TVU's I-17 approval. At the time of I-17 Petition and approval, both PDSO/DSO signed their original name, multiple times and places to swear to be compliant with Fed law and to fulfil the responsibility of a DSO. There is not a single evidence anywhere showing otherwise at the time of I-17 Petition.

The trial just shows that TVU's SEVP approval was proper and TVU made truthful statement and honest representation of each item required following SEVP instruction. Prosecution has adopted all improper theories.

### B. On TVU's International Student Admission Criteria

Government alleged in the indictment that TVU admitted students without regard to their academic qualification or intend to pursue a full course of study.

However during the trial, government called seven TUV student witnesses all of them have good qualification; and all of them have entire complete application package. As a matter of fact 4 over these seven TVU student already have a MBA degree: Varndana Satirja; Santhosh Ignatius, Kalpana Challa and Naveen Kundur.

Varndana Satija, MBA in finance; Complete Package. P175; P179, P188

Vishal Dasa, BS in Pharmacy, Already studied MSHC at ITU.AU

Anje Reddy, BS in Industry Engr, Studied MSCS at ITU

Santhosh Ignatius. MBA from India

Kolpana Challa, MBA, already from France

Naveen Kundur, MBA from NPU

Bhama Challagunda, BS in Pharmacy

None of TVU's real admitted student even missed a single required document.

At trial, it also shows that as a new university TVU partnered with consultancies, the scrutiny of international students' qualification as well as obtaining the entire required documents for the application package files lies at the responsibility of TVU's partner consultancy, per the contract agreement provision, the consultancy acts as TVU's admission office as well as admission committee. As two TVU students who obtained F1 Visa from India, both shows that they contacted and submitted

everything to Albright and Opulentus consultancy for admission, dealing with TVU's consultants who are TVU's admission committee

Government best evidence was a hearsay evidence on the ruse student R.B. the undercover agent said that he said he had not completed his Bachelor degree working for 10 years but was admitted to TVU's master degree program (HBA) by office staff Vishal Dasa. Government failed to show RB's admission letter showing that he was indeed admitted to TVU's master program. Vishal Dasa who was called as witness also did not confirm any of that.

Government further used Dr. Su's panic yelling at Parth Patel "Just Admit them all." Word to this task and question of issuing admission letter of TVU student who studied one field but applied to change to another field of study (nurse NS) – to admit them all because they already have been admitted to TVU for MS in Health Care already and been through the admission progress. Government also used Dr. Su yelling word to Anje Reddy's task of processing transferring in student (student who already studied at another university; but applied for transferring to TVU to continue study) Government tried to use Dr. Su's sarcastic humorous yelling to imply that she told Vashal Dasa to do that. But undercover agent R.B. testified that at the time of his admission Dr. Su was absent from TVU's office and he has to come back three times.

## C. Government Alleged TVU Didn't Have Any Classes or TVU Student Did Not Attend Class Meeting

Apparently, Government cannot offer single evidence that TVU did not have any class (but collecting student tuition for their I20).

All TVU's student witness testified about their classes: TVU not only have classes, but also had too many issues about those classes. Vishal Dasa testified that those classes were eventoo hard for him and he had trouble with homework assignments. Vomdana Sameri testified that her desired class's lecture was stated several weeks late. Bham Challajunda testified after some struggle of technical issues of log-in, she was able to hear the class and submit her homework to the system. Naveen Kundur testified on what TVU's virtual class room looks like during his class meeting. All TVU's students testified that they received e-mails form TVU instructor to join class meeting. There are thousand pages of class attendance record. from the Virtual classroom system. and hundreds of class meeting recordings.

- 35 -

While class attendance constitutes 10% of the final grade, faculty members were closely monitoring TVU student class attendance.

### D.  TVU's Student Mark Sheet

Further Government alleged TVU's mark sheet with "AAA-" font template as the grade of Transcript. Vishal Dasa testified clearly that grades form each trimester are in TVU system to keep a record of the course a student took. He was only allowed to change and import those courses. The "AAA-" font remains unchanged, page 801, line 5-12.

While Government kept alleging about Dr. Su gave TVU student those "AAA-" grade, during the entire trial, Government has failed to present a single hard copy of official transcript which was officially assigned to students with TVU's stamp and mailed to student as the official hardcopy.

### 2.  Insufficient Evidence to Prove Any Criminal Intent

For all the crimes alleged in the indictment, criminal intent is the important necessary element which need to exist (not a speculation) in order to constitute the offenses. Government needs to prove it beyond a reasonable doubt.

The only criminal intent the Government alleged in all of those crimes is "for personal gain of money". As in the opening statement, Mr. Rhyne declared Ms. Su's intent in one word, and that is "greed". Later he claimed that money flowed to her own pocket. However, to earn money by running a business is not a criminal intent.

Even though doing business for personal gain is not a crime, all American start-ups are aiming at profitability. That is not a criminal intent. Government has also failed to prove that Dr. Su's intent was indeed "for personal gain" during the trial or any money has "flown to her own pocket"

The best evidence Government presented was a Mercedes Benz CS300 and five properties including two commercial buildings as TVU's office. All these assets Dr. Su entitled to were all purchased from TVU corporation fund. However, Government has failed to show and/or to prove any "personal gain".

For property purchase, everyone knows that in US, a person buys a house, the personal gain is calculated when the house is sold. The market value substrate the loan amount he/she borrowed from the bank. The property's sale price minus the loan and down-payment is the gain to the owner. The loan the owner taken from the bank to purchase the house is not the owner's personal gain, not the owner's money at all. In another word, if the market value of that house or sell price of the house falls below the loan, the owner is actually in-debt (under water) and gain nothing. Also the title holder of a house doesn't mean he/she has gained all value of the house.

Government showed that all five properties were in the title of Dr. Su. Government also showed that not any personal funds were put in the purchase. Government did not show if there is any fund at any year from TVU Corporation having been distributed to the shareholder, or flowing to Ms. Su's pocket. The relationship between Dr. Su's ⸱ ⸱⸱⸱ and TVU's fund to purchase these properties were shareholder's loan. Dr. Su could not obtain a loan from a bank, so she took a loan from Tri-Valley University. The loan amount on any property purchase is not the owner's personal gain.

Government has failed to show any personal gain, any salary she paid to herself, and shareholder's distribution, i.e., not single evidence showing her personal gain.

Government also declared Ms. Su's intent was one word "Greed". The best evidence Government presented was witness Par 1 Patel's testimony that Dr. Su "want a lot of students". Earlier he said that she was obviously not for money, but at trial he cannot remember it anymore. Government tried to show that Ms. Su has greed and she is greedy for students, she wanted a lot of students, and built a big university. During the trial, among all TVU students who testified, none of them completed their tuition payments. As a Christian school, Santosh testified, he only paid $500 for more than three courses, never asked by TVU or Dr. Su for payment of tuition balance.