No. 14-10499

_____
_____


IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

─────

UNITED STATES OF AMERICA,

Appellee,

v.

SUSAN XIAO-PING SU,

Appellant.

─────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

(D.C. No. CR 11-0288-JST)

_____

APPELLANT'S PETITION FOR REHEARING
AND SUGGESTION FOR REHEARING EN BANC

_____


JOHN J. JORDAN (Cal. Bar No. 175678)
400 Montgomery St. Ste. 200
San Francisco, CA 94104
Tel: (415) 391-4814
FAX: (415) 391-4308

Attorney for Appellant
SUSAN XIAO-PING SU

_____
_____

# TABLE OF CONTENTS

I.  INTRODUCTION. ..................................... 1

a.  Appellant's Current Status. ..................... 4

II. ARGUMENT. ........................................ 5

A.  THE DISTRICT COURT ERRED IN DENYING SU'S
    MOTION FOR A JUDGMENT OF ACQUITTAL, PURSUANT
    TO FED. R. CRIM. P. 29(c). ..................... 5

1.  Introduction. .................................. 5

2.  Legal Argument. ................................ 5

a.  The evidence is insufficient to convict Su
    of harboring illegal aliens. ................... 5

i.  The two aliens were legally in this country. .... 6

ii. Su did not harbor either alien. ................. 9

b.  Counts 5 through 12, the wire fraud charges
    involving the fictitious aliens and Counts 16
    through 19, charging visa fraud, were all
    factually impossible to commit. ................ 10

c.  The money laundering charges should be
    dismissed. ..................................... 12

B.  THE DISTRICT COURT ERRED IN DENYING SU'S
    MOTION FOR A NEW TRIAL, PURSUANT TO
    FED. R. CRIM. P. 33. ........................... 14

1.  Introduction. .................................. 14

2.  Legal Argument. ................................ 14

C. THE DISTRICT COURT ERRED IN SENTENCING SU TO 196 MONTHS INCARCERATION. ...................... 21

1. Introduction. ................................. 21

2. The Government Failed to Meet its Burden of Establishing the Loss Figure. ................. 21

3. All Offenses Should Have Been Grouped........... 23

4. The 196 Month Sentence was Substantively Unreasonable. ................................. 25

D. THE TRIAL COURT IMPROPERLY ISSUED A PRELIMINARY FORFEITURE ORDER AGAINST SU. ................... 27

Conclusion....................................... 28

Statement of Related Cases

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**CASES:**

*Arizona v. United States,* 132 S.Ct. 2492 (2012)... 2, 8

*Dhital v. Mukasey,* 532 F.3d 1044 (9th Cir. 2008)..... 8

*United States v. Bush*,
626 F.3d 527 (9th Cir. 2010).................... 12, 13

*United States v. Christian*,
749 F.3d 806 (9th Cir. 2014)....................... 20

*United States v. Costello*,
666 F.3d 1040 (7th Cir. 2012)...................... 9

*United States v. Harrington*,
410 F.3d 598 (9th Cir. 2005),
*cert. denied*, 546 U.S. 1115 (2006)................ 19

*United States v. Luttrell*,
889 F.2d 806 (9th Cir. 1989), vacated in part
on other grounds, 923 F.2d 764 (9th Cir. 1991),
*cert. denied*, 112 S.Ct. 1558 (1992)............. 3, 11

*United States v. Munoz*,
605 F.3d 359 (6th Cir. 2010),
*cert. denied,* 131 S.Ct. 1813 (2011)................ 18

*United States v. Noriega-Perez*,
670 F.3d 1033 (9th Cir. 2012),
*cert. denied*, 133 S.Ct. 834 (2013).................. 6

*United States v. Parker*,
136 F.3d 653 (9th Cir. 1998)....................... 24

*United States v. Santos*, 553 U.S. 507 (2008). 3, 12, 13

*United States v. Santos*,
527 F.3d 1003 (9th Cir. 2008)...................... 22

*United States v. Smith*,
196 F.3d 1034 (9th Cir. 1999),
*cert. denied*, 529 U.S. 1028 (2000).............. 4, 24

*United States v. Vargas-Cordon*,
733 F.3d 366 (2nd Cir. 2013).................... 9, 10

**Statutes and Rules**

8 U.S.C. § 1324(a)(1)(A).......................... 5, 9

18 U.S.C. § 371................................... 10

18 U.S.C. § 1343.................................. 10

18 U.S.C. § 1957(a).............................. 12

Fed. R. Crim. P. 29..................... 2, 5, 18, 19

Fed. R. Crim. P. 32.2(b)(1)(B).................. 4, 27

Fed. R. Crim. P. 33................... 2, 3, 14, 17-19

Fed. R. Crim. P. 45(b)..................... 3, 17, 18

U.S.S.G. § 2B1.1................................. 22

U.S.S.G. § 3D1.2................................. 23

**Other Authorities**

Cal. Welf. & Inst. Code § 5150.................... 15

No. 14-10499

_____

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Appellee,

v.

SUSAN XIAO-PING SU,

Appellant.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(D.C. No. CR 13-00288-JST)
_____

APPELLANT'S PETITION FOR REHEARING
AND SUGGESTION FOR REHEARING EN BANC
_____

## I. INTRODUCTION

Susan Xiao-Ping Su respectfully petitions for a
rehearing en banc of the denial of her appeal by a
panel of this Court, in a memorandum decision filed
December 7, 2015.

1

Su appeals from her conviction, after a jury trial, of engaging in a scheme to defraud F-1 non-immigrant foreign students, and related charges, while President of Tri-Valley University.

Su raised four issues on appeal: (1) whether the district court erred in denying Su's Rule 29 motion for judgment of acquittal; (2) whether the district court erred in failing by denying Su's Rule 33 motion for a new trial (3) whether the 196 month sentence was unreasonable; and (4) whether the district court erred in entering into a preliminary order of forfeiture.

On December 7, 2015, a three-judge panel of this Court summarily denied Su's appeal on all grounds.

In counsel's judgment, however, the panel's decision on the Rule 29 motion for judgment of acquittal overlooks the fact that the two convictions for harboring illegal aliens involve two aliens who were not illegal aliens and is contrary to the holding in *Arizona v. United States,* 132 S.Ct. 2492 (2012); the

2

convictions for wire and visa fraud that involved fictitious aliens used in a government undercover operation were factually impossible for Su to commit under *United States v. Luttrell*, 889 F.2d 806, 810 (9th Cir. 1989); and the money laundering convictions are barred by the merger doctrine set out in *United States v. Santos*, 553 U.S. 507 (2008).

The panel's decision that Su's Rule 33 motion for a new trial was untimely overlooks the fact that the failure to timely file the motion was the result of excusable neglect, due to the failure of previous counsel. See Fed. R. Crim. P. 33(b)(1) & 45(b)(1)(B).

The panel's decision upholding the sentence overlooks the unreasonableness of the sentence, including the fact that the loss figure for the scheme to defraud included all tuition payments by all F-1 students, even though a large portion of students were, in the words of the district court, "co-conspirators" in the activities at Tri-Valley. ER 109.

3

In addition, the grouping of convictions under the Sentencing Guidelines resulted in impermissible double counting, under *United States v. Smith*, 196 F.3d 1034, 1036-37 (9th Cir. 1999), *cert. denied*, 529 U.S. 1028 (2000).

Finally, the panel decision overlooks that fact that the district court issued a written preliminary order of forfeiture before sentencing, rejecting Su's request for a stay, preventing Su from having the opportunity to challenge the forfeiture order contents, in violation of Fed. R. Crim. P. 32.2(b)(1)(B).

**a.  Appellant's Bail Status**

Su is currently incarcerated at Federal Detention Center in Dublin, California, serving the 196-month sentence imposed in this case.

Su's projected release date is August 5, 2028, according to the Bureau of Prison's Inmate Locator website.

## II. ARGUMENT

## A. THE DISTRICT COURT ERRED IN DENYING SU'S MOTION FOR A JUDGMENT OF ACQUITTAL, PURSUANT TO FED. R. CRIM. P. 29(c).

### 1. Introduction

Su timely moved for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29. The district court denied the motion, and the panel decision has upheld that decision.

There were specific proof issues as to multiple counts in the indictment, however, such that the Rule 29 motion should have been granted.

### 2. Legal Argument

### a. The Evidence Is Insufficient to Convict Su of Harboring Illegal Aliens

Su was convicted, in counts 22 and 24 of the indictment, of alien harboring, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). However, viewing the evidence in the light most favorable to the government, no rational trier of fact could have found Su guilty of either count of alien harboring, because the government

failed to prove that the two named aliens were here illegally, or that Su harbored them.

## i. **The two aliens were legally in this country**

The government had the burden of proving that the aliens named in counts 22 and 24, Vishal Dasa and Anji Dirisanala, were illegal aliens. *United States v. Noriega-Perez*, 670 F.3d 1033, 1037 (9th Cir. 2012), *cert. denied*, 133 S.Ct. 834 (2013). However, Dasa and Dirisanala were actually legal aliens.

The government's evidence established that in the fall of 2009, Dasa legally entered this country on an F-1 student visa from India, when he transferred to Tri-Valley from International Technical University. TR 789-99, 841. Dasa stayed enrolled as an F-1 student at Tri-Valley until the school was shut down in January 2011. TR 836.

The government's evidence established that Dirisanala legally entered the United States in January 2010, on an F-1 visa, to study for his Masters at

6

International Technical University in Sunnyvale,
California.  TR 1146-48, 1280.  On February 9, 2010, he
transferred to Tri-Valley, receiving an I-20 form.  TR
1150-54.  Dirisanala stayed enrolled as an F-1 student
until May 18, 2010, when he transferred to another
school.  TR 1190, 1207-1210.

The government's position, upheld by the panel
decision, was that both Dasa and Dirisanala were here
illegally because Tri-Valley was a fraudulent school,
which, without any notice or action by the government,
voided their visas.  TR 1849.

However, at all times charged in the indictment,
Tri-Valley was authorized by Homeland Security to admit
foreign students with F-1 visas.  While it later lost
its authorization, that was an event that had not yet
happened.  Potentially being out of status at a future
date is not the equivalent of being an illegal alien at
the time charged in the indictment.

7

Moreover, even if Dasa and Dirisanala were potentially removable, this did not make them illegal aliens. See *Arizona v. United States,* 132 S.Ct. 2492, 2496 (2012)("As a general rule, it is not a crime for a removable alien to remain in the United States."). The Supreme Court holding in *Arizona v. United States* settles this issue in favor of Su, but was not followed by the panel.

The panel decision instead cites as support *Dhital v. Mukasey,* 532 F.3d 1044, 1050 (9th Cir. 2008). But, *Dhital* does not hold that out of status equates to being here illegally.

Nor do the regulations cited in *Dhital* establish that a student is immediately and automatically out of status if there is a temporary interruption in studies. And, in fact, students at Tri-Valley, such as Bhanu Teja Challangunda, were able to maintain their F-1 status by transferring to other schools. TR 933-34.

## ii. Su did not harbor either alien

The government also failed to prove that Su harbored Dasa or Dirisanala, because it only proved that Su employed them. This is insufficient. The Seventh Circuit rejected a similarly broad definition of harboring in *United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012), pointing out that under this broad definition of harboring, the number of potential violators might well be two million. *Id.*, at 1047.

Instead, the government must also show that Su engaged in conduct that is intended to help prevent the detection of the alien by the authorities. "The mere act of providing shelter to an alien, when done without intention to help prevent the alien's detection by immigration authorities or police, is thus not an offense under § 1324(a)(1)(A)(iii)." *United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2nd Cir. 2013).

Here, the evidence that Su shielded Dasa and Dirisanala from detection is insufficient under

9

*Vargas-Cordon*. Indeed, giving the two jobs at Tri-Valley, a school registered and monitored by Homeland Security, made it simple for the government to find them.

**c.  Counts 5 Through 12, the Wire Fraud Charges Involving the Fictitious Aliens and Counts 16 Through 19, Charging Visa Fraud, Were All Factually Impossible to Commit.**

Su was convicted by the jury of 12 counts of wire fraud, in violation of 18 U.S.C. § 1343, and four counts of visa fraud, in violation of 18 U.S.C. § 371, in addition to other counts.  However, the government's proof was insufficient as to the wire fraud convictions in counts 5 through 12, as well as all four visa fraud convictions in counts 16 through 19, because these particular charges all involve fictitious aliens created during the government's undercover operation.

The panel upheld the conviction, finding that because defrauding a real F-1 student rather than a fictional F-1 student is not an element of wire fraud

10

or visa fraud, Su's factual impossibility argument is without merit.

These convictions cannot stand, however, because the crimes were all factually impossible to commit, as there were no real persons who could be defrauded, and there were no real persons who could receive visas or who needed immigration papers. Thus, it was factually impossible for these acts to further the scheme to defraud charges in the indictment. See *United States v. Luttrell*, 889 F.2d 806, 810 (9th Cir. 1989), vacated in part on other grounds, 923 F.2d 764 (9th Cir. 1991), *cert. denied*, 112 S.Ct. 1558 (1992).

All these counts charge crimes that were factually impossible for Su to commit. First, the scheme to defraud alleged in the indictment charged Su with engaging in an "illegal scheme to defraud non-immigrant aliens of money and property, specifically tuition and other fees." ER 189. But, the "victims" in these

counts were all fictitious students, and not actual aliens, and could not be defrauded.

Nor could the actions charged in these counts be viewed as furthering the general scheme to defraud, as the government was already investigating Su and contrived these actions to gather evidence against her.

**c.  The Money Laundering Charges Should Be Dismissed**

Su was found guilty by the jury of seven counts of money laundering, in violation of 18 U.S.C. § 1957(a). (counts 26, 27, 29, 31, 32, 34 and 35).

However, under the merger doctrine, these charges cannot stand, because the withdrawal of funds was an essential element of the fraud scheme and consequently cannot constitute a financial transaction involving the proceeds of independent illegal activity.  See *United States v. Bush*, 626 F.3d 527 (9th Cir. 2010), citing *United States v. Santos*, 553 U.S. 507, 516-517 (2008).

The panel found that Su purchased real estate and a car using property derived from visa fraud, but those

transactions were independent, and not a "'central component,'" of Su's fraudulent scheme, and thus did not "merge" with Su's fraud convictions, citing *United States v. Bush*, 626 F.3d 527 (9th Cir. 2010).

Here, however, the circumstances surrounding the fraud convictions were not distinct from the money laundering. Su was charged with engaging in a scheme for her to defraud immigrant aliens of tuition. The government charged that it was an essential part of the scheme to defraud that she fraudulently used money in Tri-Valley accounts to purchase real estate and an automobile. Su's withdrawal of funds to directly purchase items, without any intermediate banking steps, was thus an essential element of the charged frauds and consequently cannot constitute a financial transaction involving the proceeds of independent illegal activity.

Under the merger doctrine set out in *Santos,* therefore, the money laundering charges merged with the fraud charges and should be dismissed.

**B.  THE DISTRICT COURT ERRED IN DENYING SU'S MOTION FOR A NEW TRIAL, PURSUANT TO FED. R. CRIM. P. 33**

**1.  Introduction**

Su's Rule 33 motion for a new trial should have been granted by the district court, on the grounds that the jury was not presented relevant evidence that Su was suffering from a mental impairment.

**2.  Legal Argument**

Susan Su had a long history, starting well before the trial, of behavior exhibiting symptoms of mental illness.  As detailed in the Pre-Sentence Report, Su, at times, heard voices and saw visions "like in a movie."  PSR 92.  Su stated that these voices and visions occur mostly when she is under stress.  PSR 92.

The PSR described that in 2005 (well before these criminal allegations), Su was hospitalized for two weeks after her "imaginary things became big" and she could not recognize her husband.  PSR 92.  Su was diagnosed with Acute Psychosis of undetermined origin, possible Acute Paranoid Schizophrenia, after Su was

14

observed "talking to herself and having grandiose delusions about Britain's royal family, at times with visual hallucinations." PSR 92.

The PSR describes a second incident in 2011, when Su was placed on an involuntary Cal. Welf. & Inst. Code § 5150 psychiatric hold. PSR 93.

Then, after legal proceedings started in the district court, there were several new instances involving Su's behavior.

Prior to trial, the magistrate judge, concerned as to whether Su was suicidal, ordered that Su attend therapy. ER 18-19.

During trial, Su talked audibly during the government and defense counsel's examination of a government witness (TR 274-75); she attempted to talk to a government's witness immediately after being admonished not to do so (TR 405); and she "cheered" her defense counsel on during his questioning of a witness,

saying "Yes, Yes" in a loud voice while smiling inappropriately.  TR 883.

Finally, just prior to final arguments by counsel, at 5:30 a.m., Su sent an email, with a 2,000 page attachment, directly to the court, with copies to the government and defense counsel.  TR 1740.

Su's trial counsel, however, failed to file a motion for a new trial based on Su's mental condition.

New counsel was then retained and arranged for Dr. Amanda Gregory to evaluate the defendant.  PSR 93. Dr. Gregory found Su's symptoms were consistent with a diagnosis of Schizoaffective Disorder, Bipolar Type. PSR 95; SER 12.[1]  In Dr. Gregory's opinion, while Su may have exaggerated some symptoms during her assessment, Su's "untreated mental illness appears to have played a role in her behavior that resulted in her convictions and her erratic behavior during the trial... Her grandiose delusional thinking and unstable mood may

_____

[1]  "SER" refers to Sealed Excerpts of Record.

16

also have played a role in her behavior that resulted in her charges." SER 13.

Relying on Dr. Gregory's report, Su moved for a new trial pursuant to Fed. R. Crim. P. 33, on the ground that she was suffering from a previously unrecognized mental impairment that impacted her right to a fair trial. CR 167, 169, 170; ER 320; SER 1.

The district court denied Su's motion. The court found the motion untimely and also concluded that the evidence was not newly discovered. ER 90, 94. The panel decision upheld the denial of the Rule 33 motion, concluding that the district court did not abuse its discretion when it denied Su's motion.

However, as argued to the district court (ER 321), the failure of trial counsel to file the motion within the 14-day limit, or to obtain an extension of the filing date was the result of excusable neglect, due to the delay in the hiring of new counsel. See Fed. R. Crim. P. 33(b)(1) & 45(b)(1)(B). The time limits in

Rule 33 "must be read in conjunction with Federal Rule of Criminal Procedure 45, which provides that "[w]hen an act must or may be done within a specified period, the court ... may extend the time ... on a party's motion made ... after the time expires if the party failed to act because of excusable neglect." *United States v. Munoz*, 605 F.3d 359, 367 (6th Cir. 2010)*, cert. denied,* 131 S.Ct. 1813 (2011), quoting Fed. R. Crim. P. 45(b).

Moreover, finding the motion timely would have raised no danger of prejudice to the government. The filing of the Rule 33 motion did not delay the proceedings, as it was filed on the same day that the timely filed Rule 29 motion was filed. Finally, the reason for the delay was the retention of new counsel. There is no suggestion that Su was acting in bad faith, as once the issue of new counsel was settled on May 9, 2014, counsel immediately asked for a new briefing

schedule that included both Rule 29 and Rule 33 motions. ER 52, 54.

Alternatively, the motion was timely filed under Fed. R. Crim. P. 33(b)(1), because the proffered testimony of Dr. Gregory qualified as newly discovered evidence. See *United States v. Harrington*, 410 F.3d 598 (9th Cir. 2005), *cert. denied*, 546 U.S. 1115 (2006). While Su did have a prior history of mental illness, her mental condition worsened and came to a climax at the close of the trial, when she emailed the district court after a late night breakdown. Thus, the depth of the problem was not discovered until the trial.

Moreover, the Rule 33 motion raised substantial grounds for granting a new trial.

First, Su's mental condition impacted her pre-trial ability to consider and weigh the pre-trial 41 month plea offer made by the government.

19

Second, Su's mental condition impacted her right to a fair trial, as her increasingly strange behavior was often exhibited in the jury's view during the trial. In addition, it appears that the stress peaked at the moment when Su had to make an intelligent decision on whether to testify.

Third, and most importantly, Su's Schizoaffective Disorder could have affected her ability to appreciate the nature and quality of the criminal conduct for which she was convicted, and may have played a role in her behavior at Tri-Valley. SER 1-13. Dr. Gregory's expert testimony is particularly relevant because many, if not all, of the charges brought against Su require specific intent or intentional conduct. In *United States v. Christian*, 749 F.3d 806 (9th Cir. 2014), this Court recognized the relevance of such testimony.

Thus, the district court had ample grounds to find the motion timely, and the motion itself set out strong grounds for granting a new trial.

20

## C.   THE DISTRICT COURT ERRED IN SENTENCING SU TO 196 MONTHS INCARCERATION

### 1.   Introduction

Su's sentencing was marred by procedural error, because the court incorrectly denied several of Su's objections to the Sentencing Guidelines Calculations, which resulted in a final offense level significantly higher than the correct level.

Moreover, the sentencing of Dr. Su, a forty-four year old woman with no prior criminal record and a history of mental illness that included grandiose delusions about Britain's royal family (PSR 92) to 16 years, 4 months in prison, was unreasonable.

### 2.   The Government Failed to Meet its Burden of Establishing the Loss Figure

At sentencing, over Su's objection, the district court adopted the government's position that the loss figure for the scheme to defraud included all tuition payments by all F-1 students, even those who, in the

21

words of the district court, were "co-conspirators" in the activities at Tri-Valley.  ER 109.

The panel decision upheld that decision. However, the inclusion of the tuition payments of those co-conspirators, over continued defense objection in the district court, was clear error.

"The government bears the burden of proving loss for the purposes of § 2B1.1 by a preponderance of the evidence." *United States v. Santos*, 527 F.3d 1003, 1006-07 (9th Cir. 2008).

The government clearly failed to meet its burden here.  The government charged a scheme to defraud, where the victims are alleged to have been F-1 students who were defrauded of their tuition payment.  Then, instead of making any attempt at all to determine who were true victims as opposed to willing participants, the government just lumped all the students together.

It is quite apparent from the trial evidence that many of the F-1 students willingly paid a significantly

lower tuition payment than a traditional school would charge, in order to maintain F-1 visas, while being free to work without having to attend classes.  The government's own witness, Parth Patel, confirmed this at trial.  TR 1543-44.  The inclusion of payments made by co-conspirators into the loss figure for the fraud offenses is clearly erroneous.

Further, the government's argument that it can use intended gain as the basis for its loss figure is again erroneously grounded in the theory that the intended gain from the co-conspirators can be considered in determining the loss in a scheme to defraud actual victims.

## 3.  All Offenses Should Have Been Grouped

The district court also erred in not grouping all counts of conviction under U.S.S.G. § 3D1.2(b) and (c).

The panel decision has rejected this appeal, holding that the counts were properly grouped.  The panel decision also held that because any potential

overlap between the two groups accounted for more than one type of harm caused by Su's conduct, there was no impermissible double counting, citing *United States v. Parker*, 136 F.3d 653, 654 (9th Cir. 1998).

Su disagrees, as the grouping resulted in impermissible double counting, as one part of the Guidelines was applied to increase Su's punishment on account of a harm that has already been fully accounted for by application of another part of the Guidelines. *United States v. Smith*, 196 F.3d 1034, 1036-37 (9th Cir. 1999), *cert. denied*, 529 U.S. 1028 (2000).

Here, 20 additional levels were added for the visa fraud cross-reference, even though the visa fraud conviction is already in Group One. PSR 50. In addition, the 4 level upward adjustment for role (even though count 23 names only Su for accessing the computer) and the further 2 level upward adjustment for obstruction, were both already included in the Group

One calculation.  PSR 55, 56.  Thus, the grouping here resulted in impermissible double counting.

## 4.  The 196 Month Sentence was Unreasonable

The errors in the sentencing calculations resulted in the imposition of an unreasonable 196 month sentence.  The United States Probation Officer had recommended a lower sentence of 168 months (PSR Sentencing Recommendation), and the defense had asked for a sentence of 70 months, with a requirement of mental health/alcohol treatment both before and after incarceration.  ER 381.  The 196 month sentence imposed was an unreasonable sentence for a 44-year-old woman who has no prior criminal record and a history of mental illness.

First, the use of the scheme to defraud guidelines results here in an inflated guideline score for what is really a visa fraud case.  The guidelines for a visa fraud case are significantly lower, as the government's own sentencing memorandum acknowledged.  ER 340.

25

Second, contrary to many fraud cases, any victim here can be made whole. All, or almost all, of the proceeds from Tri-Valley were used by Su to buy real estate or kept in bank accounts. The government has seized all those assets, allowing for full restitution.

Third, the 196 month sentence is far out of proportion to the much lower sentences imposed against the accomplices. Anji Dirisanala was sentenced to 1 day probation; Vishal Dasa was sentenced to 30 days probation; Ramakrishna Karra was sentenced to 6 months probation and a $2000 fine; and Tushar Tambe was sentenced to three years probation. ER 380. The sentence imposed against Su is far higher, yet no attempt was made in the district court to explain this extreme disparity.

Fourth, Su has been suffering from a mental condition that, as the probation officer noted, has been largely untreated. PSR Sentencing Recommendation.

26

## D.  THE TRIAL COURT IMPROPERLY ISSUED A PRELIMINARY FORFEITURE ORDER AGAINST SU

Su also appealed from the preliminary forfeiture order.  In particular, Su disputed the loss amount, which was used as the basis for the judgment.  In addition, as there is insufficient evidence to support the alien harboring charges, the forfeiture of the Boulder Court properties based solely on those convictions (ER 59), should be reversed.

In addition, Su's right to due process was violated when the district court issued a preliminary forfeiture order without first holding a requested hearing.

The panel, however, held that the district court satisfied the requirement to hold a hearing for contested forfeiture orders at the sentencing.

But, the decision overlooks the fact that the district court issued a written preliminary order of forfeiture before sentencing, preventing Su from having any real opportunity to challenge the forfeiture order, in violation of Fed. R. Crim. P. 32.2(b)(1)(B).

27

## Conclusion

The petition should be granted.

December 15, 2015.　　　　Respectfully submitted,


　　　　　　　　　　　　/S/ John J. Jordan
　　　　　　　　　　　　JOHN J. JORDAN
　　　　　　　　　　　　Attorney for Appellant

**STATEMENT OF RELATED CASES**

Appellant is unaware of any related cases pending before this Court.

**CERTIFICATE OF COMPLIANCE**

Counsel for appellant hereby certifies that this Petition for Rehearing uses 14 point monospaced typeface, is 28 pages in length, and contains approximately 4,063 words, which complies with F.R.A.P. 32 and Circuit Rule 40-1(a).

/S/ John J. Jordan
JOHN J. JORDAN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on December 15, 2015, I electronically filed the foregoing with the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system:

APPELLANT'S PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

I certify that the United States Attorney, 450 Golden Gate Ave., San Francisco, CA 94102, the attorney for the appellee, is a registered CM/ECF user and that service will be accomplished by the appellate CM/ECF system.


Dated: December 15, 2015.     /S/ John J. Jordan
                              JOHN J. JORDAN